UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:15-CV-00040-GNS

SAMSON ANDERSON PLAINTIFF

v.

LUXURY IMPORTS OF BOWLING GREEN; BRETT DENVER; BMW FINANCIAL SERVICES NA, LLC; and BMW OF NORTH AMERICA, LLC DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Motion to Compel Arbitration (DN 8). The motion is been fully briefed, and the Court held a hearing on the motion on August 19, 2015. For the reasons stated below, the motion is **GRANTED** and **DENIED IN PART**.

## I. SUMMARY OF FACTS AND CLAIMS

From March 2013 through February 2014, Samson Anderson ("Anderson") was employed by Luxury Imports of Bowling Green ("Luxury Imports") as a car salesman. (Compl. ¶¶ 1, 50, DN 1-2). As part of the hiring process, Anderson signed a form ("Employment Agreement") stating that he was an at-will employee and agreeing to arbitrate any claims he had against his employer. (Baron Decl. Ex. A, DN 8-3). At all times relevant to this action, Luxury Imports' General Manager was Brett Denver ("Denver"). (Compl. ¶ 5). During his employment,

Anderson "purchased a vehicle from Luxury Imports of Bowling Green which was contracted and financed by BMW Financial Services, NA, LLC, and BMW of North America, LLC, and [] Denver . . . ." (Compl. ¶ 8). The financing agreement ("Financing Agreement") for the vehicle also contained an arbitration provision. (Burke Decl. Ex. A, DN 8-2; Baron Decl. Ex. B).

On February 1, 2014, Luxury Imports terminated Anderson's employment. (Compl. ¶ 50). Anderson then filed this action alleging racial discrimination relating to his employment by Luxury Imports in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and the Kentucky Civil Rights Act ("KCRA"), KRS Chapter 344. (Compl. ¶ 7). He also alleges violations of Title VII, KCRA, and the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f, by both BMW entities relating to his BMW acquisition, and he maintains that other Luxury Imports customers were subject to similar acts of discrimination. (Compl. ¶¶ 8-9). Finally, Anderson asserts a claim of intentional infliction of emotional distress against Denver in his individual capacity and as an agent for co-Defendants. (Compl. ¶ 10).

After being served, Defendants moved to compel arbitration and stay this proceeding. On August 19, 2015, the Court held a hearing on the pending motion and heard the testimony from two witnesses—Anderson and Gayle Smith, Luxury Imports' Human Resources Manager.

## II. STANDARD OF REVIEW

In ruling on a motion to compel arbitration, courts apply the summary judgment standard in Fed. R. Civ. P. 56(c). *See Arnold v. Rent-a-Center, Inc.*, No. 11-18-JBC, 2011 WL 1810145, at *2 (E.D. Ky. May 12, 2011) ("This court will treat the motion to compel arbitration as one for summary judgment . . . ."); *Weddle Enters., Inc. v. Treviicos-Soletanche, J.V.*, No. 1:14CV-00061-JHM, 2014 WL 5242904, at *2 (W.D. Ky. Oct. 15, 2014) ("A motion to dismiss based on the existence of a valid arbitration agreement is not evaluated under the usual Fed. R. Civ. P.

12(b)(6) standard. Instead, courts apply the standard applicable to motions for summary judgment." (citations omitted)). "In order to show that the validity of the agreement is in issue, the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate, a showing that mirrors the summary judgment standard." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) (internal quotation marks omitted).

## III. DISCUSSION

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, a written agreement to arbitrate involving a dispute arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (quoting 9 U.S.C. § 2).

> When considering a motion to stay proceedings and compel arbitration under the Act, a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Id.* (citing *Compuserve, Inc. v. Vigny Int'l Fin., Ltd.*, 760 F. Supp. 1273, 1278 (S.D. Ohio 1990)). Generally, any doubts regarding arbitrability are to be resolved in favor of arbitration. *See Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citation omitted). *See also Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984) (holding that the FAA preempts state law regarding arbitration).

In seeking to compel arbitration in this matter, Defendants rely upon separate arbitration provisions in the Employment Agreement and the Financing Agreement executed by Anderson.

The enforceability of each arbitration provision and Plaintiff's specific objections to enforceability of those provisions are addressed below.

**A. Employment Agreement**

The Court must first determine whether the Employment Agreement requires arbitration to resolve any of Anderson's employment-related claims against Luxury Imports and Driver. The arbitration provision provides as follows:

> **EMPLOYMENT AT WILL AND ARBITRATION** Read This Document Carefully. It contains important information about limitations on your rights as an employee. You are employed pursuant to the Company's "at will" policy. **Your employment and compensation can be terminated by the Company or by you at any time, with or without cause and/or with or without notice. You agree that if any Dispute arises, the Dispute will be resolved by binding arbitration by a single arbitrator under the applicable rules of the alternative dispute resolution agency named below, with the arbitrator rendering a written decision with separate findings of fact and conclusions of law.** A Dispute is any civil claim or controversy which would otherwise require or allow resort to any court or other governmental dispute resolution arising from, related to, or having any connection whatsoever with your employment by the Company, whether based on tort, contract, statutory or common law, equity or otherwise, specifically including but not limited to any and all matters arising under federal, state, or local civil rights or employment related laws, regulations, rules, or theories. Notwithstanding the foregoing, the following will not be considered a Dispute: (1) a workers compensation claim which shall be subject to Kentucky workers compensation claim procedures; (2) exclusively monetary claims of less than $15,000 which may be brought in the appropriate Court of Compliment [sic] Jurisdiction; or (3) claims or actions by government agencies enforcing any law which is not subject to arbitration. The arbitrator herein shall be a member of the bar of Kentucky chosen pursuant to the rules of the alternative dispute resolution agency named below. All rules of pleadings, discovery, and evidence applicable to civil actions in Kentucky's circuit courts shall apply as determined by the arbitrator. The resolution of the Dispute shall be based solely upon the law governing the claims pled (whether federal or Kentucky, as the case may be), and the arbitrator may not invoke any basis other than such controlling law. Any Dispute must be submitted to arbitration within the time limit for action under the statute or other law regulating the statute of limitations for such action and shall be subject to all prior governmental filings as required by the applicable law. An award by the arbitrator shall be final and binding on all parties to the proceeding. The arbitration shall take place in the city or county in which the Company is located. All arbitration costs and expenses shall be borne as determined by the arbitrator. **By agreeing to this binding arbitration provision, both the**

> **Employee and the Employer give up their rights to trial by jury. This is the exclusive procedure for remedy for any Dispute covered.** This is the entire understanding between the Employee and the Employer regarding Disputes about employment and reasons for termination of employment. There is no other contract concerning employment between the Company and you.

(Baron Decl. Ex. A, DN 8-3). Thus, from the specific terms of the Employment Agreement, Anderson did express his intent to waive his right to pursue any employment-related claim he had in court and to instead pursue those claims in arbitration.

The second consideration is the scope of the arbitration provision. "District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement." *Fazio*, 340 F.3d at 395 (citing *Stout*, 228 F.3d at 714). In light of the terms of the employment agreement, Anderson's claims clearly fall within the scope of the arbitration provision. With the exception of three articulated exceptions, the provision defines a "dispute" requiring arbitration as:

> any civil claim or controversy which would otherwise require or allow resort to any court or other governmental dispute resolution arising from, related to, or having any connection whatsoever with your employment by the Company, whether based on tort, contract, statutory or common law, equity or otherwise, specifically including but not limited to any and all matters arising under federal, state, or local civil rights or employment related laws, regulations, rules, or theories.

(Baron Decl. Ex. A). From the express definition of this term, the scope of the arbitration provision encompasses Anderson's claims against Luxury Imports and Denver in this action because those claims arise directly from the employment relationship.

The Court also concludes that the third factor mandates the enforcement of the arbitration provision. "The burden of establishing that Congress intended to preclude arbitration for a statutory claim rests with the party seeking to avoid arbitration." *Browne v. Kline Tysons Imports, Inc.*, 190 F. Supp. 2d 827, 830 (E.D. Va. 2002) (citing *Gilmer v. Interstate/Johnson*

*Lane Corp.*, 500 U.S. 20, 26 (1991)). Anderson cannot meet his burden because the Supreme Court has held that arbitration provisions in employment agreements fall within the FAA. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113-114 (2001).

Finally, it is unnecessary to address the bifurcation of claims. All claims asserted in the Complaint fall within the scope of the arbitration provisions found in either the Employment Agreement or the Financing Agreement.

For these reasons, the arbitration provision in the Employment Agreement is enforceable under the FAA. The Court will grant the motion on this basis.

**B. Financing Agreement**

Anderson has also asserted various claims related his acquisition of a BMW during his employment. In relevant part, the arbitration provision in the Financing Agreement provides:

> **PLEASE REVIEW - IMPORTANT - AFFECTS MY LEGAL RIGHTS**
>
> **NOTICE:** Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial. If a dispute is arbitrated, I will give up my right to participate as a class representative or class member on any class claim I may have against you including any right to class arbitration or any consolidation of individual arbitrations. Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights you and I would have in court may not be available in arbitration
>
> Any claim or dispute, whether in contract, tort, statute or otherwise (including, the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between me and you or your employees, agents, successors or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action or other mass action. I expressly waive any right I may have to arbitrate a class action.

(Baron Decl. Ex. B; Burke Decl. Ex. A). The terms of the Financing Agreement reflect that Anderson agreed to arbitrate any claims he had relating to the vehicle transaction and to waive his right to a jury trial.

Like the Employment Agreement, the scope of the arbitration provision in the Financing Agreement is also broad. The provision encompasses any and claims relating to the BMW vehicle whether arising in tort, contract, or statute. As outlined in the Complaint, Anderson has asserted relevant claims that fall within the scope of the Financing Agreement.

The Court concludes the third factor also supports the enforcement of the arbitration provision because Anderson has failed to meet his burden to show that his claims fall outside of the FAA. As one court has noted, "vehicles are instrumentalities of commerce, which Congress has the power to regulate. *Wade v. Country Ford, Inc.*, No. 2:09CV220, 2011 WL 1086366, at *4 (N.D. Miss. Mar. 24, 2011) (citing *United States v. Bishop*, 66 F.3d 569, 590 (3d Cir. 1995)). Accordingly, this transaction and the arbitration provision in the Financing Agreement fall under the FAA.

As discussed above, Anderson's claims are subject to either arbitration provision in the Employment Agreement or the Financing Agreement. Because the Court has concluded that all claims are subject to arbitration, the Court will grant the motion to compel arbitration of all claims covered by arbitration provision of the Financing Agreement.

**C. Plaintiff's Objections**

While Anderson initially denied that he had signed both agreements, he conceded during the hearing that his signature appeared on both. He also testified, however, that he had no recollection of signing those forms and that he was asked to sign numerous forms on his first day of employment without any explanation of each form's significance. In essence, Anderson's

argument is that he—as a seasoned car salesman—was pressured into signing the Financing Agreement for the purchase of a car and signing the Employment Agreement. The fact that he admittedly did not read what he was signing undermines his opposition to those contractual provisions. Quoting the U.S. Supreme Court, Kentucky's highest court stated:

> It will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written. But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission.

*United Talking Mach. Co. v. Metcalf*, 191 S.W. 881, 883 (Ky. 1915) (quoting *Upton v. Tribilock*, 91 U.S. 45, 50 (1875)) (internal quotation marks omitted). *See also Morgan v. Mengel Co.*, 242 S.W. 860, 862 (Ky. 1922) ("It is the duty of every contracting party to learn and know its contents before he signs and delivers it. . . . To permit a party, when sued on a written contract, to admit that he signed it, but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts."). Here, Anderson's failure to read the agreements does not preclude enforcement of the arbitration provisions contained therein.

Anderson also argues that the Court should refuse to enforce the arbitration provisions because they contain a waiver of his right to a jury trial. Under both federal and state law, however, a party may waive his right to a civil jury trial. *See Bonfield v. AAMCO Transmissions, Inc.*, 717 F. Supp. 589, 594 (N.D. Ill. 1989) ("Although the Seventh Amendment guarantees the right to a jury trial in civil cases, that right—like most constitutional rights—is waivable."); *Mowbray v. Zumot*, 536 F. Supp. 2d 617, 620 (D. Md. 2008) ("Though the right to a jury trial under the Seventh Amendment is a fundamental one, it 'can be knowingly and intelligently waived by contract.'" (citation omitted)). *See also Johnson v. Career Sys. Devs.*,

No. 4:09CV-76-M, 2010 WL 292667, at *4 (W.D. Ky. Jan. 20, 2010) (citation omitted) (rejecting an attempt to invalid an arbitration provision because it waived the right to a jury trial); *Fannon v. Ball*, 259 S.W. 73, 75 (1924) (noting that Kentucky courts recognize "[t]he principle of practice that a litigant may waive a trial by jury . . . ."). Thus, this objection lacks merit.

During the hearing, Anderson argued that the arbitration provisions should not be enforced because he had no choice but to sign the agreements—i.e., those provisions were included in contracts of adhesion. "A contract of adhesion has been described as 'a standardized contract, which [is] imposed and drafted by the party of superior bargaining strength, [and] relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Johnson v. Career Sys. Devs.*, No. 4:09CV-76-M, 2010 WL 292667, at *4 (W.D. Ky. Jan. 20, 2010) (alterations in original) (quoting *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 342 n.20 (Ky. App. 2001)). "Under Kentucky law, an arbitration agreement in a contract of adhesion will not be found to be unconscionable if there are other alternative options available to the party having less bargaining power." *Id.* (citation omitted). In *Johnson v. Career Systems Developments*, this Court rejected claims of procedural and substantive unconscionability similar to Anderson's on the basis that there was insufficient proof that the plaintiff could not find other jobs or that the provision was substantively unconscionable.[1] *See id.* Because Anderson has also failed to present such proof in this case, this argument must fail.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration and Motion to Stay Proceedings (DN 8) is **GRANTED IN PART** to the

[1] Of course, there could be no reasonable argument that Anderson had no alternative to financing his purchase of the vehicle through BMW finance, as opposed to any other lender.

extent that the parties' dispute shall be arbitrated. The motion is **DENIED IN PART** with respect to the request to stay this proceeding, and this case is **DISMISSED**.

**Greg N. Stivers, Judge**
**United States District Court**
September 25, 2015

cc: counsel of record